18 P.3d 1234

**STATE of Arizona, Appellee,**

v.

**Douglas DERELLO, Appellant.**

**No. 1 CA–CR 99–0955.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 30, 2001.

Janet Napolitano, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and J.D. Nielsen, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Thomas A. Gorman, Sedona, Attorney for Appellant.

## OPINION

LANKFORD, Presiding Judge.

¶1 Defendant Douglas Derello appeals from his enhanced sentence for second-degree burglary, two counts of robbery, and two counts of kidnapping. In a prior memorandum decision, we remanded this case to the trial court to conduct an evidentiary hearing to determine whether Defendant's 1978 offenses of unlawful flight from a law enforcement vehicle and prohibited possession of a deadly weapon constituted separate "historical prior felony convictions" for purposes of enhancing his sentence. *State v. Derello*, 1 CA–CR–98–0574 (App. July 20, 1999) (mem.decision). On remand, the trial court decided that the two prior convictions were separate historical prior felony convictions. The trial court additionally determined that offenses committed by Defendant in 1975 and 1977 are historical prior felony convictions.

¶2 For the reasons that follow, we reject the trial court's conclusion that the unlawful flight and prohibited possessor offenses constitute separate historical prior felony convictions. We agree, however, that Defendant's 1975 and 1977 offenses are historical prior felony convictions. We therefore affirm the sentences imposed based on two historical prior felony convictions.

¶3 The important facts are as follows. A jury convicted Defendant in 1998 of the current offenses for his role in the 1996 robbery

of an elderly couple in their home. The State alleged that Defendant had six historical prior felony convictions and that he had committed the 1996 offenses while on release from confinement. *See* Ariz.Rev.Stat. Ann. ("A.R.S.") §§ 13–604(U) (1996)[1] and 13–604.02(A) (1996). The six alleged historical felony convictions consist of four offenses committed in 1978, attempted murder in the first degree, armed robbery, unlawful flight, and prohibited possession of a deadly weapon; a 1977 grand theft; and a 1975 attempted rape.

¶ 4 Defendant admitted to two prior felony convictions in return for the State's dismissal of the allegation that the offenses had been committed while on release from confinement. Specifically, Defendant admitted prior convictions for unlawful flight from a law enforcement vehicle, a class five felony, and prohibited possession of a deadly weapon, a class six felony. The State alleged, and Defendant admitted, that both offenses occurred on November 23, 1978.

¶ 5 The trial court treated the two 1978 offenses as two historical prior felony convictions for purposes of sentence enhancement. It then sentenced Defendant to aggravated, concurrent sentences ranging from twelve to twenty-eight years.

■ ¶ 6 On his first appeal, Defendant raised for the first time the possibility that the two 1978 offenses were not separate historical prior felony convictions. Section 13–604(M) (Supp.2000) provides that convictions for two or more offenses committed "on the same occasion" constitute only one historical prior felony conviction. The improper use of two prior convictions rather than one for purposes of sentence enhancement constitutes fundamental error. *State v. Kelly*, 190 Ariz. 532, 534 ¶ 5, 950 P.2d 1153, 1155 ¶ 5 (1997). Because the trial court record was silent on whether Defendant's 1978 convictions were committed on the same occasion, this Court remanded the matter with instructions to conduct an evidentiary hearing to determine whether the two 1978 offenses admitted by Defendant were, in fact, separate historical prior felony convictions.

¶ 7 On remand, the trial court concluded that, although Defendant committed the unlawful flight and prohibited possession offenses within minutes of each other, a "sufficient break in the time and place" of the two offenses existed to qualify those offenses as separate historical prior felony convictions. The trial court also determined that at least two historical prior convictions existed even if the unlawful flight and prohibited possession priors constituted only one historical prior felony conviction. The trial court said that either Defendant's 1977 prior conviction for grand theft or his 1975 prior conviction for attempted rape justified finding an additional historical prior felony conviction.

■ ¶ 8 A trial court's determination that a prior conviction constitutes an historical prior felony conviction for purposes of sentence enhancement involves a mixed question of law and fact. *See United States v. Davis*, 922 F.2d 1385, 1387–88 (9th Cir. 1991) (reviewing *de novo* trial court's determination that two prior convictions were not "related" and thus did not have to be counted as one prior for purposes of sentence enhancement). We review such a determination *de novo*. *Id.*

■ ¶ 9 No "all-encompassing test" exists to determine whether different crimes occur on the "same occasion." *State v. Henry*, 152 Ariz. 608, 612, 734 P.2d 93, 97 (1987). Rather, a court must consider the spatial and temporal relationship between the two crimes, whether the crimes involved the same or different victims, whether the crimes were continuous and uninterrupted, and whether they were directed to the accomplishment of a single criminal objective. *See Kelly*, 190 Ariz. at 534, 950 P.2d at 1155. For example, when different crimes are committed at the same place, on the same victim or group of victims, and at the same time or as part of a continuous series of criminal acts, they are committed on the "same occasion" for purposes of sentence enhancement. *See id.* (citing *Henry*, 152 Ariz. at 612, 734 P.2d at 97).

1. Section 13–604(U) has since been renumbered as A.R.S. § 13–604(V) (Supp.2000).

¶ 10   After reviewing the record, we find that the unlawful flight and the prohibited possession offenses occurred on the same occasion.   The following events gave rise to the attempted murder, robbery, unlawful flight, and prohibited possession of a weapon charges against Defendant.   Defendant and two accomplices robbed a convenience store located at the corner of 27th Avenue and Campbell in Phoenix.   Defendant shot the store's clerk with a revolver during the robbery.   Defendant and his two companions then fled the scene in a 1969 Pontiac.

¶ 11   Moments after the robbery, a Phoenix police officer on patrol in the area of 15th Avenue and McDowell heard an emergency dispatch regarding three suspects fleeing the scene of a robbery in a light-colored vehicle. The vehicle's license plate was broadcast approximately two to three minutes later.   By this time, the officer had already begun to follow the suspects' vehicle as it headed east on McDowell.   The officer followed the vehicle for approximately one-half mile.

¶ 12   After the officer received back-up support, however, he activated his patrol car's flashing lights.   A brief, high-speed chase ensued.   This chase gave rise to the charge of unlawful flight from a law enforcement vehicle.

¶ 13   The spatial and temporal relationship of the two crimes reveals that the crimes occurred on the same occasion.   Defendant and his accomplices were en route from the scene of the robbery, where Defendant possessed a weapon, to Defendant's Central Phoenix residence when they encountered the police.   The officer who pursued the vehicle received the report of the robbery almost immediately after Defendant and his accomplices left the store, and the officer encountered their vehicle shortly after.   Thus, the two offenses were closely related both by time and distance.

¶ 14   The record also arguably demonstrates a "continuous and uninterrupted" chain of events connecting the prohibited possession with the subsequent flight from the pursuing police officer.   During the very brief interlude between leaving the convenience store and encountering the police, Defendant divided the money and food stolen from the convenience store, unloaded the revolver used in the robbery, and placed the gun under his seat.   Defendant continued to possess a weapon during his flight from the police.

¶ 15   Finally, both offenses were "directed to the accomplishment of a single criminal objective."   That objective was the robbery.

¶ 16   We conclude that Defendant's prior convictions for prohibited possession and unlawful flight from a law enforcement vehicle occurred on the "same occasion."   The two convictions thus constitute only one historical prior felony conviction for purposes of sentence enhancement.   The trial court erred in treating the offenses as distinct historical priors.

¶ 17   The trial court also ruled, however, that Defendant's 1975 or 1977 felony offenses constituted an additional historical prior. We now consider whether either offense constitutes an historical prior felony conviction.

¶ 18   Defendant maintains that his earlier offenses are too old to constitute historical prior felony convictions.   Both the 1975 and 1977 offenses were class three felonies.   Under A.R.S. section 13–604(U)(1)(b),[2] a class three felony committed within the ten years immediately preceding the date of the present offense constitutes an historical prior felony conviction.   "Any time spent incarcerated is excluded in calculating if the offense was committed within the preceding ten years."   A.R.S. § 13–604(U)(1)(b).

¶ 19   Although these convictions occurred more than ten calendar years before the present offenses, they were within the ten-year limit because of excluded time.   Defendant's 1975 attempted rape and 1977 grand theft offenses were committed twenty-one and nineteen years, respectively, before the offenses at issue in this appeal.   However, the time Defendant spent incarcerated during that period is excluded from the calculation.   Defendant served concurrent sentences for his 1975 and 1977 offenses and spent less than one year in prison for those crimes.   He also served seventeen years in

2.   Section 13–604(U)(1)(b) has been renumbered as A.R.S. § 13–604(V)(1)(b) (Supp.2000).

prison for the four offenses he committed in 1978.

¶ 20 Defendant argues that the trial court could not exclude time served for the 1978 crimes because only time spent incarcerated for the offense where age is being calculated can be counted. He contends that "[a]ny time spent incarcerated" refers only to time spent incarcerated for the specific offense the State seeks to use as an historical prior felony conviction. Because he spent less than one year imprisoned for the 1975 and 1977 offenses, Defendant reasons that excluding that brief period of incarceration is insufficient to bring the two prior offenses within the ten-year time frame.

¶ 21 We reject Defendant's argument because it is contrary to the plain language of the statute. In construing a statute, our goal is "to fulfill the intent of the legislature that wrote it." *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996) (quoting *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993)). We first consider the statute's language "because we expect it to be 'the best and most reliable index of a statute's meaning.'" *Id.* When the statute's language is plain and unambiguous, we must follow the text as written. *See Canon School Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

¶ 22 We find no ambiguity in section 13–604(U)(1)(b)'s directive that *"[a]ny time spent incarcerated* is excluded in calculating if the offense was committed within the preceding ten years." (Emphasis added.) The plain meaning of the phrase "any time spent incarcerated" indicates that the Legislature intended to exclude all time that a defendant spent in prison, regardless of whether that incarceration was for the particular prior conviction at issue or for some other crime. *See State v. Graves,* 188 Ariz. 24, 27, 932 P.2d 289, 292 (App.1996) (implicitly adopting this interpretation of the statute by excluding time spent incarcerated for two separate pri-

or offenses in determining whether one of those prior offenses was an historical prior felony conviction).

¶ 23 This interpretation of the incarceration exclusion is also sensible in light of the purpose of the statutory scheme. By enacting section 13–604, the Legislature intended to punish repetitive offenders more severely than first time offenders. *See State v. Garcia,* 189 Ariz. 510, 514, 943 P.2d 870, 874 (App.1997). Excluding time spent incarcerated is more reflective of repetitive offender status because a defendant is more able and apt to commit crimes, especially of this nature, while out of prison rather than in prison. Excluding time spent incarcerated for any conviction means that an offender does not elude repetitive status merely because imprisonment has rendered him unable to commit further crimes. Thus, the time exclusion furthers the intent of the repetitive offender statute.

¶ 24 Defendant was incarcerated for approximately eighteen years between 1975 and 1996. When we exclude this time from the calculation, we find that Defendant's 1975 and 1977 offenses fall within the ten-year limitation of section 13–604(U)(1)(b). Either offense thus qualifies as an historical prior felony conviction.

¶ 25 Therefore, we agree with the trial court that Defendant has at least two historical prior felony convictions, although we hold that only one of those historical priors arises from the series of offenses Defendant committed in 1978.[3] Accordingly, we affirm the enhanced sentences imposed by the trial court.

CONCURRING: ANN A. SCOTT TIMMER, Judge, and SUSAN A. EHRLICH, Judge.

---

3. Because we concur with the trial court's finding of two historical prior felony convictions, we need not address Defendant's final argument on appeal. Defendant argued that the trial court violated his due process rights by stating its

intent to impose a "super-maximum" aggravated sentence if this Court were to find that Defendant had only one historical prior felony conviction for purposes of sentence enhancement.